# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| ISAAC DE LUA-RUIZ, individually; NEDIA DE LUA-RUIZ, individually; and Isaac and Nedia De Lua-Ruiz, as next friends of NND and AID, minors<br><br>Plaintiffs,<br><br>V.<br><br>YAMAHA MOTOR CO., LTD.; and YAMAHA MOTOR CORPORATION, U.S.A.<br><br>Defendants. | CIVIL ACTION NO. C-17-00128<br><br>**Jury** |

---

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME ISAAC DE LUA-RUIZ, individually; NEDIA DE LUA-RUIZ, individually; and Isaac and Nedia De Lua-Ruiz as next friends of NND and AID, minors, Plaintiffs herein, complaining of YAMAHA MOTOR CORPORATION, U.S.A.; and YAMAHA MOTOR CO., LTD; and for cause of action would respectfully show as follows:

### I. PARTIES

1. Plaintiff ISAAC DE LUA-RUIZ is a natural person and resident of Nueces County, Texas.

2. Plaintiff NEDIA DE LUA-RUIZ, the wife of Isaac De Lua-Ruiz, is a natural person and resident of Nueces County, Texas.

3. Minor Plaintiff, NND, the son of Isaac and Nedia De Lua-Ruiz, is a natural person and a resident of Nueces County, Texas.

4. Minor Plaintiff, AID, the son of Isaac and Nedia De Lua-Ruiz, is a natural person and a resident of Nueces County, Texas.

5. Defendant, YAMAHA MOTOR CO., LTD ("YMC"), is a Japanese corporation, with its principal place of business at 2500 Shingai, Iwata-shi, Shizuoka-ken, Japan. This defendant has answered and appeared herein.

6. Defendant, YAMAHA MOTOR CORPORATION, U.S.A ("YMUS"), is a corporation organized and existing under the laws of the State of California, and is authorized to conduct business in Texas. This defendant has answered and appeared herein.

7. YMC and YMUS are at times referred to collectively herein as "Yamaha."

## II. JURISDICTION and VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as required under 28 U.S.C. § 1332(a), and there is complete diversity of citizenship between Plaintiffs and Defendants, pursuant to 28 U.S.C. § 1332(a)(3).

9. The Southern District of Texas, Corpus Christi Division, is proper venue in this because the subject incident in which Isaac De Lua-Ruiz was injured occurred in

Nueces County, Texas. Moreover, the motorcycle in question was sold in Nueces County, Texas.

### III. FACTS

#### Yamaha

10. In 2013, Yamaha released a new model motorcycle, the FZ-09.[1] Though released in calendar year 2013, it was considered a model year (MY) 2014.

11. The new FZ-09 was designed and manufactured by Yamaha with **throttle-by-wire** (TBW). On earlier motorcycles with traditional throttle-cable, the throttle-cable mechanically moves the throttle control on the engine as the motorcycle operator twists the right grip on the handlebar. With TBW, the twist of the hand grip is converted to a digital signal and a computer is inserted between the operator's twist of the grip and the throttle control on the engine.

12. With TBW, when the operator twists the right grip for acceleration, an electronic signal is sent to the **engine control unit** (ECU). The ECU is a computer that monitors engine speed, vehicle speed, gear selection, and other factors, and then calculates how much to open the throttle based on algorithms.

13. The ride-by-wire Yamaha Chip Controlled Throttle (YCC-T) system senses the slightest throttle input by the rider and transmits it to the ECU, which instantaneously calculates the throttle valve opening based on its algorithm. The ECU

---

[1] In the American market, the motorcycle was marketed as the FZ-09. In other markets around the globe, the same motorcycle was marketed as the MT-09. The general reference herein to the FZ-09 is intended to include motorcycles marketed as MT-09.

then commands a servo-motor actuator that moves the throttle valve. Yamaha claims this technology allows the rider to maintain control over the engine.

14. The ECU's software is referred to as "mapping." The ECU mapping controls the power output of the engine. To design the ECU mapping is to design the power output of the engine. To alter the ECU mapping is to alter the power output and response of the engine. Controllability of the motorcycle, especially motorcycles like the FZ-09, is maintained with proper ECU mapping. Controllability of the motorcycle is lost with improper ECU mapping. Proper ECU mapping provides a linear throttle response that is smooth and intuitive. Improper ECU mapping results in a non-linear throttle response and an unexpected and sudden (even explosive) engine response – an operational response that is dangerous.

15. Moreover, proper ECU software foresees and identifies errant signal input or malfunction and incorporates fail-safe strategies so that the ECU does not instigate an unwanted acceleration.

16. The YCC-T on the 2014 FZ-09 was an application of the TBW developed by Yamaha and first utilized on the 2006 YZF-R6 model motorcycle, though the engine on the FZ-09 was substantially different from the engine on the YZF-R6.

17. Immediately upon the release of the 2014 FZ-09, multiple complaints arose from around the world about the improper throttle response at low speeds in some of the motorcycles.

18. Industry reviewers and consumers alike denigrated the 2014 FZ-09's TBW with phrases like, "twitchy throttle response," "jerky throttle response," "surging

felt at low speeds," and "throttle abruptness." Another posted, "I've nearly jerked myself off the bike when starting out in parking lots."

19. In response to the complaints, Yamaha altered the motorcycle in the next model year. In the 2015 FZ-09, Yamaha remapped the ECU to smooth out the throttle response and provide better controllability of the motorcycle. The remapping involved a change to the ECU's software that controlled the fuel injection and throttle body.

20. YMC sent to its world-wide dealers information about the throttle condition and a modification to the ECU to correct the condition. On or about September 18, 2014, YMUS sent a Technical Bulletin to Yamaha dealers in the United States, and through them the operators of the 2014 FZ-09s, that described the MY 2015 mapping that could be installed in the ECU of the 2014 FZ-09.

21. While the initial release of the 2014 FZ-09 brought an avalanche of complaints about the throttle, the remapping of the 2014 FZ-09 with the MY 2015 mapping, brought rave reviews, with phrases like:

    a. "Wow, bike is completely different. ... Yamaha definitely got it right this time!"

    b. "Big difference at low speeds in first and second gear. ... Very noticeable right off the line, glad I got it done."

    c. "It's literally a night and day difference."

    d. "It's brilliant!"

    e. "The re-flashed bike is now the product that customers should have received in the first place!"

f. "All the 'snatchiness' and vagueness around where/how/if fuel is delivered to accelerate is gone."

g. "The bike is finally predictable and not 'jumpy'."

22. Yamaha's Technical Bulletin described the cause of non-linear throttle characteristics on the FZ-09 as: "Variances in production tolerance in the throttle servo motor/throttle body in combination with ride-by-wire throttle sensitivity can result in this non-linear transition feeling."

23. Yamaha's Technical Bulletin instructed dealers to, "Modify only those units that experience this condition."

24. Unfortunately, Yamaha did not directly notify consumers of the Technical Bulletin and the available remapping.

25. The 2014 FZ-09 in question never received the remapping.

26. Moreover, in addition to the "twitchy throttle" and "non-linear acceleration" complaints, Yamaha has received complaints and information that FZ-09 motorcycle operators have experienced severe acceleration events, where the throttle by wire system delivered extreme, unwanted, and unexpected accelerations.

### THE SUBJECT MOTORCYCLE

27. The motorcycle in question bears Vehicle Identification Number JYARN33E2EA002119.

28. Yamaha transferred the 2014 FZ-09 motorcycle in question to its authorized dealership in Corpus Christi, Texas, Gramb, Inc. d/b/a Corpus Christi Cycle Plaza ("Gramb/CCCP"), on or about November or December, 2013.

29. On or about December 17, 2013, Gramb/CCCP sold the 2014 FZ-09 motorcycle in question to Earl Koepsel.

30. In September, 2014, Yamaha issued a safety recall on the 2014 FZ-09 motorcycles due to a headlight lead wire of insufficient length that could lead to a headlight malfunction. As part of the recall, Yamaha notified both its dealers and FZ-09 owners of the defect and the recall. The notification is dated September 22, 2014.

31. In October, 2015, Koepsel sold the FZ-09 motorcycle in question to Plaintiff, Isaac De Lua-Ruiz.

### THE MOTORCYCLE WRECK

32. On or about January 19, 2016, Plaintiff, Isaac De Lua-Ruiz, having completed a transaction at Coastal Community and Teachers Credit Union, 6810 Saratoga Boulevard in Corpus Christi, Nueces County, Texas, was operating the 2014 Yamaha FZ-09 motorcycle in question in the parking lot as he headed towards the parking lot exit. While making a left turn in the parking lot, Mr. De Lua-Ruiz rolled on the throttle of the subject motorcycle to begin a slow acceleration, when the motorcycle suddenly and without warning accelerated abruptly and more severely than intended or anticipated by Mr. De Lua-Ruiz, which jerked Mr. De Lua-Ruiz backward and precipitated an uncontrolled acceleration. The motorcycle reared onto its back tire.

Mr. De Lua-Ruiz let go of the motorcycle and he flew from the motorcycle and onto a raised cement edge.

33. Mr. De Lua-Ruiz sustained serious injuries, including permanent paralysis from the waist down.

### IV. CAUSES OF ACTION AGAINST YAMAHA MOTOR CO., LTD (YMC) and YAMAHA MOTOR CORPORATION, U.S.A. (YMUS)

#### STRICT LIABILITY – PRODUCT DEFECT

34. YMC and YMUS are in the business of designing, manufacturing, and selling motorcycles, including motorcycles such as the motorcycle in question.

35. YMC and YMUS designed, manufactured, and sold the motorcycle in question.

36. At the time the motorcycle in question originally left the possession and control of YMC and YMUS, and each of them, there was a design defect in the motorcycle that rendered it unreasonably dangerous and that was a producing cause of the motorcycle wreck in question. And at the time the motorcycle left the control of YMC and YMUS, a safer alternative design was available that would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the motorcycle's utility, and the available safer alternative design was both economically and technologically feasible by the application of existing or reasonably achievable scientific knowledge. The technical bulletin describes one design defect. Another design defect in the throttle by wire system allowed the system to deliver an

acceleration that is more abrupt and more severe than intended or expected by the operator.

37. At the time the motorcycle in question originally left the possession and control of YMC and YMUS, and each of them, there was a manufacturing defect in the motorcycle that rendered it unreasonably dangerous and that was a producing cause of the motorcycle wreck in question. The technical bulleting describes a manufacturing defect. Another design defect in the throttle by wire system allowed the system to deliver an acceleration that is more abrupt and more severe than intended or expected by the operator.

38. At the time the motorcycle in question originally left the possession and control of YMC and YMUS, and each of them, there was a defect in the instructions or warnings that accompanied the motorcycle; that is, there was a failure to give adequate warnings of the motorcycle's unusual throttle danger that was known or by the application of reasonably developed human skill and foresight should have been known by YMC and YMUS. The failure to provide adequate instruction and warning of the unusual throttle danger rendered the motorcycle unreasonably dangerous as marketed, and such defect was a producing cause of the motorcycle wreck in question.

39. The motorcycle reached Mr. De Lua-Ruiz without any substantial change in its condition that would affect the performance of the throttle response.

40. The motorcycle was at all times used in the manner for which it was intended.

## NEGLIGENCE

41. Plaintiffs would further show Defendant YMC and YMUS were negligent in the following respects:

   a. failing to manufacture the subject motorcycle in accordance with the product's planned specifications or failing to use adequate specifications in the manufacture of the subject motorcycle;

   b. failing to adequately design the motorcycle so that it would be reasonably safe during ordinary and foreseeable use;

   c. failing to design the ECU software with adequate fail-safe protection to prevent acceleration that is more abrupt and more severe than intended or expected by the operator;

   d. failing to implement an adequate quality-control system that would have led to the discovery of defects in the motorcycle prior to placing it into the stream of commerce;

   e. failing to adequately test the motorcycle prior to placing it into the stream of commerce;

   f. placing an unreasonably dangerous product into the stream of commerce;

   g. failing to notify consumers of a defect;

   h. having undertaken the corrective action to fix the non-linear throttle characteristics of the YCC-T on the 2014 FZ-09 as stated in the Technical Bulletin, failing to notify consumers of the available remapping as stated in the Technical Bulletin; and,

i. failing to design, manufacture, and deliver a throttle-by-wire system that would adequately protect against errant, unwanted, unintended, or extreme signals from being delivered by the ECU to the throttle system, resulting in unwanted, unintended, unexpected and dangerous accelerations.

42. Each of the foregoing acts or omissions, whether taken singularly or in any combination, constitutes negligence which proximately caused Plaintiffs' injuries and/or damages, as set forth more specifically herein.

### RES IPSA LOQUITUR

43. The doctrine of *res ipsa loquitur* is applicable. The condition that resulted in the unexpected, severe acceleration that initiated Mr. De Lua Ruiz's crash is not one that normally exists in the absence of defect. Moreover, the condition was one not intended by YMC in its design and manufacture of the motorcycle. In its investigation of the complaints of the condition, YMC ruled out other component parts, and determined that a condition in the throttle bottle caused the defect, but YMC could not or did not determine what specific condition of the throttle body was the root cause. YMC only determined that it was the throttle body that caused the condition. In this circumstance, YMC has superior knowledge or means of information to determine the cause of the condition, and the condition of the throttle body and the ECU (which YMC subsequently modified to correct the condition) on the 2014 FZ-09 were under the management and control of YMC.

## V. DAMAGES

44. As a direct, proximate, and/or producing cause of the incident complained of herein, Plaintiff ISAAC DE LUA-RUIZ suffered serious bodily injuries including but not limited to permanent paralysis.

45. The injuries to Plaintiff ISAAC DE LUA-RUIZ are permanent in nature and, in all reasonable probability, he will continue to suffer from the effects of such injuries for the remainder of his natural life.

46. Plaintiff ISAAC DE LUA-RUIZ has also endured severe pain and mental anguish as a result of such injuries and, in all reasonable probability, he will continue to endure severe pain and mental anguish for the remainder of his natural life.

47. The injuries to Plaintiff ISAAC DE LUA-RUIZ have also resulted in disfigurement, physical limitations and loss of enjoyment of life which, in all reasonable probability, will continue for the remainder of his natural life.

48. In addition, Plaintiff ISAAC DE LUA-RUIZ has incurred expenses for medical care and attention. Such expenses were necessary for the treatment and care of the injuries resulting from the incident complained of herein. The amounts charged for such services were reasonable at the time and place the services were provided.

49. In addition, there is a reasonable probability that Plaintiff ISAAC DE LUA-RUIZ will require future medical care and attention and will therefore incur the cost of future reasonable and necessary medical expenses.

50. Plaintiff ISAAC DE LUA-RUIZ seeks all damages allowed by law, including but not limited to the following:

a. Past medical expenses;

b. Future medical expenses;

c. Pain and suffering in the past;

d. Pain and suffering in the future;

e. Mental anguish in the past;

f. Mental anguish in the future;

g. Physical impairment in the past;

h. Physical impairment in the future;

i. Physical disfigurement in the past;

j. Physical disfigurement in the future;

k. Loss of enjoyment of life in the past;

l. Loss of enjoyment of life in the future;

m. Lost earning capacity in the past;

n. Loss of future earning capacity;

o. Pre-judgment interest; and

p. Post-judgment interest.

51. As a result of the injuries to Plaintiff ISAAC DE LUA-RUIZ in the incident in question, Plaintiff NEDIA DE LUA-RUIZ has suffered the loss of consortium and loss of household services of her husband, both in the past and, in reasonable probability, in the future. Plaintiff NEDIA DE LUA-RUIZ also seeks pre-judgment and post-judgment interest at the highest legal rate.

52. As a result of the serious, permanent, and disabling injuries to Plaintiff ISAAC DE LUA-RUIZ in the motorcycle wreck in question, minor Plaintiffs NND and AID, the children of ISAAC AND NEDIA DE LUA-RUIZ, have suffered the loss of their father's parental consortium in the past, and in reasonable probability, in the future, and also seek pre-judgment and post-judgment interest at the highest legal rate.

## VI. JURY DEMAND

53. Plaintiffs demand a trial by jury.

## VII. PRAYER

54. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that on final trial Plaintiffs have judgment against Defendants, jointly and severally, in an amount to be determined by the jury, together with all pre-judgment and post-judgment interest as allowed by law, costs of court, and for such other and further relief to which Plaintiffs may be justly entitled at law or in equity.

Respectfully submitted,

*/s/ William R. Edwards, III*
William R. Edwards, III
Attorney-in-Charge
State Bar No. 06465010
Federal ID No. 7588
The Edwards Law Firm
P.O. Box 480 (78403-0480)
Frost Bank Plaza
802 North Carancahua Street, Suite 1400
Corpus Christi, Texas 78401-0023
Telephone: (361) 698-7600
Facsimile: (361) 698-7614
E-mail: bedwards@edwardsfirm.com
federalfiling@edwardsfirm.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of February, 2018, the foregoing document was filed via the Court's CM/ECF system which will forward a copy of same to all counsel of record:

Jeffrey S. Hawkins
GERMER, BEAMAN & BROWN, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
*Attorneys for Defendants Yamaha Motor Co., Ltd.; and Yamaha Motor Corporation, U.S.A.*

Frank D. Hosley
BOWMAN AND BROOKE, LLP
1064 Greenwood Blvd., Suite 212
Lake Mary, Florida 32746
*Attorneys for Defendants Yamaha Motor Co., Ltd.; and Yamaha Motor Corporation, U.S.A.*

/s/ William R. Edwards, III
William R. Edwards, III